(Davis fees)

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| **EARL S. DAVIS,** | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 99 C 3009 |
| | ) | |
| **TIMOTHY BUDZ, Former Facility Director of the Sexually Violent Persons Unit, in his individual Capacity,** | ) ) ) | Judge Rebecca R. Pallmeyer |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION AND ORDER

Plaintiff Earl Davis is a civilly-committed mental health patient in the custody of the Illinois Department of Human Services ("DHS"). Since 1998, he has been housed in the DHS's Treatment and Detention Facility ("TDF") pursuant to the Sexually Violent Persons Commitment Act. In this action, Davis claimed that the conditions of his confinement violate his constitutional rights to equal protection of the laws and substantive due process. Named as Defendants at trial were Timothy Budz, the former director of the TDF; Thomas Monahan, the TDF's current director; and Howard Peters, III, the former Secretary of DHS. Following a lengthy bench trial, the court dismissed all claims against all Defendants except Mr. Davis's claims against Defendant Budz, relating to certain harsh security measures. As to those claims, the court found in favor of Mr. Davis and entered a modest damages award. *See Davis v. Peters*, 566 F. Supp. 2d 790 (N.D. Ill. 2008). After some negotiations, Defendant's appeal from that award was withdrawn.

Plaintiff's appointed attorneys now move for an award of fees and expenses. (Plaintiff Earl Davis' Petition For Attorneys' Fees and Expenses [96] [hereinafter, "Plaintiff's Petition"]). For the reasons set forth here, the motion is granted in part and denied in part.

## **DISCUSSION**

**I.     Plaintiff is the Prevailing Party**

The prevailing plaintiff in a § 1983 civil rights case is presumptively entitled to an award of attorneys' fees pursuant to 42 U.S.C. § 1988.  Plaintiff is deemed a prevailing party so long as he "succeed[ed] on any significant issue in the litigation which achieves some of the benefit" he sought in filing the case.  *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983).  His status as a prevailing party "does not turn on the magnitude of the relief obtained." *Farrar v. Hobby*, 506 U.S. 103, 114 (1992).

As Defendants emphasize, Plaintiff raised a host of claims arising from his confinement and sued a number of Defendants.  Some of those claims and Defendants were ultimately dismissed voluntarily, and the court dismissed others on summary judgment or after the trial.  Plaintiff Davis did, however, prevail on two claims: the court concluded that Defendant Budz violated the Constitution by maintaining a universal strip-and body-cavity-search policy for all detainees at the Sheridan TDF.  From March 2000 through September 2004, all detainees were strip-searched and body-cavity-searched before and after any contact with individuals outside the TDF, including their attorneys and family members—a policy that, according to Defendant's own expert witness, is not used at any other detention facility.  The court concluded that during the period of time that the TDF was maintained at Joliet, strip searches prior to visits were excessive.

Mr. Davis also prevailed on his claim that his substantive due process rights were violated by Defendant's use of the "black box" restraint for all detainees being transported to and from the TDF from October 2000 until January 2002.  As to this policy, as well, Defendant's own expert was unaware of any other institution that imposed these restraint on all detainees, regardless of the threat they posed. The court recognized that Mr. Budz exercised professional judgment in adopting the black box policy for a brief period after an attempted escape, but concluded that imposing the policy universally for an additional nine months was excessive.

As Plaintiff acknowledges, the court's award of damages was very modest: Mr. Davis was

2

awarded $30 for each hour that he was subject to wearing the black box, a total of $1,102, and $100 for each of eight strip-searches. The total award is $1,902.50. Prevailing party status does not turn on the size of the award, however, and the court is satisfied that Plaintiff Davis is entitled to an award of fees.

## II.     Calculating the Appropriate Fee: the Lodestar Analysis

The reasonableness of an award of attorneys' fees is determined using the lodestar method, starting by multiplying the number of hours reasonably expended by counsel's reasonable hourly rate. *Hensley*, 461 U.S. at 433. Hours that are excessive, redundant or otherwise unnecessary are not "reasonably expended" and should therefore be excluded from this calculation. *Id.* at 434. The district court is also expected to consider other factors such as the degree of success obtained by the prevailing party's counsel, the novelty and difficulty of the questions presented, the skill required by the particular case, the customary fee, whether the fee is fixed or contingent, the experience of the attorneys, and awards in similar cases. *Id.* at 430 n.3. After weighing these considerations, the court exercises its discretion to render an appropriate award without being constrained by any precise formula. *Id.* at 436-37.

### A.     Hourly Rate

A reasonable hourly rate for attorneys' fees under Section 1988 is calculated according to the "prevailing market rates in the relevant community." *Wis. v. Hotline Indus., Inc.*, 236 F.3d 363, 366 (7th Cir. 2000) (citing *Blum v. Stenson*, 465 U.S. 886, 895 (1984)). The rate at which an attorney actually bills paying clients for similar work is "presumptively appropriate" for calculating the market rate. *Denius v. Dunlap*, 330 F.3d 919, 930 (7th Cir. 2003) (citation omitted). Plaintiff's counsel seeks fees at their law firm's standard attorney billing rates, ranging from $270 to $700 per hour. As these attorneys have demonstrated that the claimed hourly rates are the rates they charge to fee-paying clients, the burden shifts to Defendants to establish that a lower rate is appropriate. *See People Who Care v. Rockford Bd. Of Educ., Sch. Dist. No. 205*, 90 F.3d 1307, 1313 (7th Cir.

1996). Defendant has asserted two principal challenges to Plaintiff's claimed rates: (1) that the claimed rate is not a true average and instead reflects a premium in that some clients negotiate discounts, and others fail to pay their bills; and (2) billing at the current billing rate for all of counsel's time over the ten-year period this case was pending results in a windfall. (Budz's Objections to Plaintiff's Motion for Attorneys' Fees [107] [hereinafter, "Defendant's Objections"] at 9, 11.)

Plaintiff's response to these objections is not completely satisfying. He asserts that as a "single plaintiff," Mr. Davis would be unable to negotiate the discounted rates available to large-volume clients. (Reply Mem. [113] at 6.) Respectfully, the court finds it hard to believe that a substantial institutional client is generally charged a lower fee than an individual of more modest means. And there is a certain irony in this analysis, in light of the fact that the entity that will in this case be paying the bill—the State of Illinois—is unquestionably a substantial institution that could presumably negotiate a discount for legal services.

With respect to the current rates/windfall concern, Plaintiff correctly notes that use of current rates for all hours devoted to the litigation is one method of compensating for the delay in payment of fees pursuant to fee-shifting statutes. *See Matter of Continental Illinois Securities Litigation*, 962 F.2d 566, 571 (7th Cir. 1992). And the court would expect an attorney's hourly rate to rise gradually over time, both to address the rising cost of living and the attorney's increasing skills as he/she gains experience. That said, the increase in hourly rates over time here is very substantial, as it was a function not only of these predictable developments but also results from the promotion of associate attorneys to partner. For example, the hourly rate charged for the work of lead counsel, Everett J. Cygal, rose from $224 to $585 over the course of ten years. Plaintiff argues that this sharp increase is irrelevant unless Defendant establishes that the increase is not consistent in the Chicago law community. The court acknowledges that Defendant has not done so but notes, as well, that the increase in counsel's billing rates runs substantially higher than the rise in the consumer price index.

Under the circumstances here, the court believes it is most appropriate to use the rates the lawyers charged when they rendered services and then add interest on that amount. The court offers the same direction with respect to the hourly rates charged by Plaintiff's counsel for their paralegals.

### B. Hours Reasonably Expended

The party submitting the fee petition has "the burden of justifying the fees requested." *Spellan v. Bd. of Ed. for Dist. 111*, 59 F.3d 642, 646 (7th Cir. 1995). The Supreme Court has directed that "[c]ounsel for the prevailing party should make a good-faith effort to exclude from a fee request hours that are excessive, redundant, or otherwise unnecessary, just as a lawyer in private practice ethically is obligated to exclude such hours from his fee submission." *Hensley*, 461 U.S. at 434. Defendant argues that Plaintiff's attorneys have not fully met that obligation, and has raised several objections to the number of hours for which payment is requested, which the court considers in turn.

#### 1. Vague Entries

Defendant urges that Plaintiff's itemized listing of work performed includes a number of vague entries. (Defendant's Objections at 12-13.) Defendant collects some of the troublesome entries in Exhibit C to its opposition memorandum, including many in which the work is described only as "telephone conference with client," "review correspondence," or "document review." Defendant complains, as well, about instances in which vague descriptions are gathered together with more precise descriptions and then assigned a single total amount of time. The practice of "block billing" is not prohibited, but it "does not provide the best possible description of attorneys' fees . . . ." *Farfaras v. Citizens Bank & Trust of Chicago*, 433 F.3d 558, 569 (7th Cir. 2006).

The court has confidence in counsel's good faith and has no doubt that the time for which Plaintiff's lawyers kept records was in fact devoted to this litigation. That said, the practice of failing to describe the work performed with greater specificity is problematic in this case, where so many

5

of Mr. Davis's claims were withdrawn or dismissed. The court will not award fees for time spent on matters unrelated to the issues on which a plaintiff has prevailed, and where a "plaintiff has achieved only partial or limited success," an award for all hours devoted to the litigation may be excessive. *Hensley*, 461 U.S. at 436; *Gautreaux v. Chicago Housing Authority*, 491 F.3d 649, 661 (7th Cir. 2007). Counsel's failure to describe the work performed in detail complicates the court's efforts to determine what award is appropriate.

Defendant has identified 352 hours of time entries as wholly or partially vague and proposes that the court disallow any recovery for those hours. As an alternative, Defendant suggests that any time entry that is wholly vague be disallowed, and the court reduce the hours of "block billed" time in amount proportionate to the vague entry, a reduction of 286.71 hours. Plaintiff's reply meets this concern only by pointing out that Defendant's own attorneys included vague or general time descriptions as well. This court concludes some reduction of the amount requested is necessary to ensure that Plaintiff is not compensated for time devoted to issues unrelated to the success he has achieved. The court will reduce the fees requested by 50% of the 286.71 hours identified in Defendant's Exhibit C.

### 2. Entries Unrelated to the Litigation

Defendant's second objection relates to a handful of time entries that are unreimbursable because they bear no relation to this case or the consolidated litigation from which it stems (for example, time for attendance at court hearings when no such hearing took place, or work described as "post-trial" on dates prior to the trial in this case). Plaintiff's reply makes no response to this objection, and the court sustains it. The court will reduce paralegal time by 9 hours ($2,070) and attorney time by 1.25 hours ($562.50). *See* Defendant's Objection, Exhibit D.

### 3. Entries Related to Unsuccessful Claims

Defendant next identifies a group of time entries related to claims or issues on which Plaintiff did not prevail. Again, Plaintiff has not responded directly to this objection, and, having examined

6

the time entries Defendant has identified, the court believes the objection is well-taken. The court will reduce the attorney time requested by 13.9 hours ($7,801.50) devoted to Plaintiff's claim regarding access to his legal materials after the TDF moved from Joliet to Rushville; by 67.37 hours ($30,481.80) devoted to a motion for default against Defendant Budz and a motion to disqualify Budz and a witness, Joel Dvoskin, from testifying; and by 34.03 hours ($11,253.54) for time devoted to a class action complaint and issues regarding legal mail and other conditions of confinement.

### 4. Excessive Time

Defendant takes particular issue with the 168 hours devoted by Plaintiff's counsel to the post-trial brief. Defendant notes that the trial itself took far less time, and the 168 hours resulted in a post-trial brief that consumed only 20 pages of text [50]. Defendant notes, further, that despite this obviously substantial effort, Plaintiff failed in that memorandum to make any mention of a key exhibit identifying occasions on which Mr. Budz was strip-searched. Instead, Plaintiff focused on that exhibit in his motion to alter or amend the judgment [60], which was granted in part [67].

Although Plaintiff again declines to comment on this concern, the court believes the significant reduction for which Defendant argues is unwarranted. Plaintiff's post-trial brief consumed a large number of hours, but was well-written and persuasive. A direct comparison of time writing and researching to time presenting evidence is not meaningful in a case such as this one where the legal standards are uncertain. Plaintiff's subsequent motion to alter or amend was largely unsuccessful, however, and, to the extent it was successful, should have been unnecessary. The court sustains Defendant's objection to the time devoted to that motion ($15,423.50).

### 5. Inspection of the Joliet TDF

Lead counsel Everett Cygal accompanied an expert witness on a visit to the Joliet TDF on February 11, 2001. Defendant argues that the nine hours Mr. Cygal devoted to that visit should not be compensated. Defendant cites a Third Circuit case, *Halderman by Halderman v. Pennhurst State School & Hosp.*, 49 F.3d 939, 942 (3rd Cir. 1995), where the court refused to compensate

counsel for "time spent accompanying non-testifying experts on various site visits." This court is less certain that such efforts are, as the Third Circuit put it, a "'wasteful use of . . . talent for matters easily delegable to non-professionals,'" *id.* at 942 (citations omitted), but nevertheless agrees with Defendant that fees for this time should be disallowed. Defendant asserts–and Plaintiff has not denied–that the inspection related only to physical safety issues "such as food preparation, pest control and other similar issues," not to the security-measures claims on which Mr. Davis prevailed at trial. (Defendant's Objections at 17-18.) Nine hours of Mr. Cygan's time ($5,130.00) will be disallowed.

### 6. Paralegal Entries

It is well settled that a reasonable attorney's fee should include compensation for paralegal work as well as that of attorneys. *Missouri v. Jenkins by Agyei*, 491 U.S. 274, 285 (1989). "Of course, purely clerical or secretarial tasks should not be billed at a paralegal rate, regardless of who performs them." *Id.* at 288 n.10; *see also Spegon v. Catholic Bishop of Chicago*, 175 F.3d 544, 553 (7th Cir. 1999) ("the district court should disallow time spent on what are essentially 'clerical' or secretarial tasks"); *People Who Care*, 90 F.3d at 1315 (finding it reasonable to require attorneys to delegate work to the "correct level" of employee); *Inks v. Healthcare Distributors of Indiana, Inc.*, 901 F. Supp. 1403, 1416 (N.D. Ind. 1995) ("delivery of discovery materials to opposing counsel . . . is a task that could be handled by clerical staff," hence not compensable).

Defendant has prepared a lengthy spreadsheet identifying time entries for work performed by paralegals that Defendant deems ineligible for reimbursement. Defendant characterizes the challenged time entries as "vague, clerical and excessive or duplicative." (Defendant's Objections at 18; Spreadsheet, Exhibit L.) Having examined the spreadsheet, the court does not share Defendant's suspicion that Plaintiff's attorneys routinely assigned to paralegals work that a lesser-trained clerical employee could have performed. For example, Defendant classifies as "clerical" a time entry for work described as "Updating correspondence and pleading indices/working with

8

Practice Technology setting up Concordance database." (Exhibit L, time entry dated 1/29/07.) Another entry is for "Organizing and collating Plaintiffs' and Defendants' production documents prior to having them sent to a vendor for scanning and OCR(ing)." (Exhibit L, time entry dated 4/16/07.) Yet another is for "Ordering pleadings up from Records center/pulling, copying and scanning Discovery pleadings and forwarding to Josh Lee." (Exhibit L, time entry dated 8/27/08). The court is satisfied that these entries, and those for other tasks Defendant deems "clerical" are in fact reimbursable. *See Lopez v. City of Chicago*, No. 01 C 1823, 2007 WL 4162805, *5-6 (N.D. Ill. Nov. 20, 2007) ("Paralegal time spent on ' "clerical" or secretarial tasks' should be disallowed," but "organizational tasks associated with compiling and maintaining" an electronic database are paralegal skills eligible for fee-shifting.) Nor is the court troubled by time spent bringing a substitute paralegal up to speed. *See Dupuy v. McEwen*, 648 F. Supp. 2d 1007, 1022 (2009) (time spent getting up to speed on a case is compensable where the professional thereafter devotes significant time to the case).

The court will, however, disallow time where the only activity reflected in the time entry appears to be a straightforward assignment of copying, scanning, binding, or shipping documents: 6/13/05 [Adams, 3 hours]; 8/9/06 [Adams, 1 hour]; 2/27/07 [Adams, 1 hour]; 3/6/07 [Adams, 3 hours]; 3/7/07 [Adams, 1 hour]; 5/30/07 [Adams, 2 hours]; 9/17/07 [Adams, 1.5 hours]; 10/1/07 [Adams, 2 hours]; 2/4/08 [Adams, 2 hours]; 5/15/08 [Adams, 1 hour]; 5/16/08 [Adams, 1 hour]; and 5/22/08 [Adams, 1 hour]. The court sustains, as well, Defendant's vagueness objection to activity described only as "post trial work": 6/28/07 [Adams, 2 hours]; 7/2/07 [Adams, 2 hours]; 7/3/07 [Adams, 1 hour]; 7/6/07 [Adams, 2 hours]; 7/10/07 [Adams, 0.5 hours]; 7/12/07 [Adams, 3 hours]; and 7/13/07 [Adams, 1.5 hours].

The objection to paralegal time is otherwise overruled.

### 7. Other Clerical Fees

Defendant objects to Plaintiff's inclusion in the fee petition of charges for work performed

9

by research librarians, project assistants and individuals in "practice technology." (Defendant's Objections at 20.) In his one-paragraph response to this objection, Plaintiff merely points out that these staff members have particularized skills and "can assist with technical projects that most secretaries would not be able to accomplish." (Plaintiff's Reply at 9.) The same could be said for a variety of law firm employees–accounting staff or technology support personnel, for example. Yet the cost of those employees is routinely understood as overhead and is not ordinarily charged to clients. Indeed, it is not clear to the court Plaintiff's attorneys routinely charge for the work of their librarians or project assistants on an hourly basis to their fee-paying clients. The objection to Plaintiff's request for reimbursement for these expenses is sustained. For the same reason, the court sustains Defendant's objection to Plaintiff's request for reimbursement of overtime pay for counsel's secretaries.

### III.     Downward Adjustment to the Lodestar

Once it has determined the lodestar fee, the court is free to adjust that fee based on a number of factors including, most significantly, the degree of success plaintiff has obtained. *Spegon*, 185 F.3d at 550, *Farrar*, 506 U.S. at 114. Factors relevant to the analysis include not only the financial recovery as compared with what the plaintiff sought, but also the significance of the issues on which he prevailed, and the public interest. *See, e.g.*, *Connolly v. National School Bus Service, Inc.*, 177 F.3d 593 (7th Cir. 1999).

Defendant urges that Plaintiff's very limited success requires a substantial reduction in the fees to be awarded. As Defendant points out, Plaintiff's recovery is tiny as compared with the substantial damages award for which he argued at trial. In similar cases of limited monetary recovery, lodestar reductions of 50% have been upheld as within a district court's discretion. For example, in *Spegon v. Catholic Bishop of Chicago*, the Court of Appeals held that the district court properly used its discretion to reduce the lodestar figure by 50% to acknowledge plaintiff's limited success. Plaintiff in *Spegon*, as here, had recovered only a tiny fraction of the relief demanded. 175

F.3d 544, 558 n.7. In *Spanish Action Comm. of Chicago v. City of Chicago*, 811 F.2d 1129, 1137 (7th Cir. 1987), the district court used its discretion to reduce plaintiff's fee request by half to account for the simplicity of the case and the plaintiff's limited success. In that case, limited success was measured by dismissal of plaintiff's punitive damage claims, resulting in a monetary recovery that "did not come close to giving the plaintiff all that it had asked for." *Id.* at 1135.

This court is not certain that a comparison of dollars sought with dollars recovered is particularly useful in this case. Counsel's demand for hundreds of thousands of dollars was impassioned and arguably hyperbolic. On the other hand, for a person who, like Mr. Davis, is confined effectively for the rest of his life, even a very small monetary award is meaningful. The liberty claim on which he prevailed has great significance for detainees in his circumstances. And the public, too, has an interest in ensuring that administrators of facilities where mentally disordered persons are housed exercise thoughtful professional judgment about security practices. In this respect, Mr. Davis unquestionably prevailed on an important and substantial claim.

The court nevertheless recognizes that this victory came at great cost—not only to Mr. Davis's attorneys, who hope to recover some of their losses by way of this petition. Mr. Davis presented a host of other claims and named several other Defendants. All but two of those claims, against a single Defendant, were dismissed or discarded along the way. The withdrawal or dismissal of so many other conditions-of-confinement claims is relevant to the degree of success Mr. Davis can claim here and warrants a reduction in the fees he seeks to recover.

The court concludes that an overall reduction of claimed fees by 40% is appropriate.

**IV.**    **Expenses**

Finally, Plaintiff seeks reimbursement for some $45,324.49 for such expenses as local transportation, meals, attorney and witness travel, fax and telephone charges, online legal research and color copies. (Certain other expenses are recoverable by way of a bill of costs and are addressed in another opinion entered today.) Defendant acknowledges that such expenses may

11

be recoverable in some circumstances, but argues that they are insufficiently documented in this case. The court agrees.

### A.     Computerized Legal Research

A large portion of the expenses at issue are costs incurred for computerized legal research. Our Court of Appeals has long recognized that the cost of such research is compensable as part of an attorneys' fee award because the "added cost of computerized research is normally matched with a corresponding reduction in the amount of time an attorney must spend researching." *Haroco, Inc. v. American Nat'l Bank and Trust Co.*, 38 F.3d 1429, 1440 (7th Cir. 1994); *see Feldman v. Olin Corp.*, No. 09-168-GPM, 2011 WL 711054, *3 (S.D. Ill. Feb. 22, 2011) (recognizing *Haroco* as authoritative on this issue despite some cases suggesting otherwise). Courts note, however, that a party seeking recovery for such expenses must provide "information from which the court may determine whether the computerized legal research charges were reasonably incurred." *Williams v. Z. D. Masonry Corp.*, No. 07 C 6207, 2009 WL 383614, *5 (N.D. Ill. Feb. 17, 2009) (disallowing recovery where petition did not "describe what research was performed, or even when during each billing month the research was undertaken"). *Newsome v. McCabe*, No. 96 C 7680, 2002 WL 1008472, *9 n.33 (N.D. Ill. May 17, 2002) (descriptions of legal research contained in the attorney time records are insufficient to substantiate the request for computerized research expenses; court is not required to match records to topics described).

All that Plaintiff here has offered is a list of dates on which legal research was purportedly performed and the dates on which WESTLAW billed for the service. (Plaintiff's Petition, Exhibit B.) There is no explanation about the nature or subject matter of the research performed. Plaintiff suggest that the content of the research can be "deduced from the correspondent time entries." (Plaintiff's Reply at 10.) Like Judge Plunkett in *Newsome*, however, this court "is not obligated to comb through the [law firm's] attorney time records in an attempt to match the computerized legal research charges to the research topics therein described." *Newsome*, 2002 WL 1008472, *9 n.33.

Moreover, Defendant contends that in some instances, online research is listed for an attorney whose time entry for that day makes no mention of any research. And there are some research entries on dates when no attorney bills any time at all. (Defendant's Objections at 27-28.)

Plaintiff's request for reimbursement for online research will be denied.

### B. Transportation, Meals, Telephone, Postage, Facsimile

Plaintiff seeks reimbursement for a number of other out-of-pocket expenses, including parking, cab fare, late night dinners, fax, and postage. Beyond a listing of these expenses, Plaintiff offers no documentation for these claims, nor any explanation as to the need to incur them in this case. The court faced a similar situation in *Newsome*. There, as here, the case spanned many years and required enormous effort on the part of counsel. The court nevertheless refused to excuse the requirement that expenses the attorneys claimed be appropriately supported:

> Plaintiff also cannot recover [counsel]'s costs for long-distance telephone calls, postage, facsimile transmissions, messenger services, in-house photocopying, computerized legal research, cab fare, parking, overtime meals and transportation, supplies and secretarial overtime. Though these sorts of expenses are ordinarily recoverable, they are insufficiently documented in this case. The only support plaintiff submitted for these expenses are computer print-outs and invoices that say nothing more than the date and amount of each expense. Certainly, plaintiff's counsel was not required to compile a list of every sheet of paper photocopied, faxed or sent by messenger and justify each decision to do so. But we cannot make a reasonableness determination without some explanation of: (1) who was called; (2) what was mailed, faxed or messengered and to whom; (3) what was copied and why; (4) what was researched; (5) what supplies were used and why they were necessary; and (6) why cab rides, parking, overtime meals, transportation and secretarial work were required. Because plaintiff has not provided even the most general explanation of the necessity of these expenses, he may not recover for them.

*Newsome*, 2002 WL 1008472, *9. The circumstances of this case are remarkably similar, and the court follows *Newsome* in concluding the documentation for the claimed expenses is inadequate. Plaintiff here contends that "[i]t would be unduly burdensome and onerous to explain each and every charge in this matter in detail and why such expenses were necessary. . . ." (Plaintiff's Reply at 11.) This court does not suggest an individual receipt and a paragraph-long explanation would be required for every reimbursable expense (though technology makes retention of records much

13

easer than it once was). The court does believe, however, that the expenses such as the ones charged here can properly be part of a fee-shifting award only on a reasonable showing of the particularized need for the expense at issue. Defendant's response drew Plaintiff's attention to this issue and to the relevant case law, but Plaintiff chose not to amplify the request. The objection to reimbursement for these expenses is sustained.

## **CONCLUSION**

For the reasons stated here, the court concludes Plaintiff is the prevailing party. His motion for an award of fees and expenses [96, 97] is granted in part and denied in part. Plaintiff is awarded attorneys' fees in the amounts claimed by his lawyers, with deductions as explained. Counsel will be paid at the rates charged during the time the work was performed, with interest. The overall award is adjusted downward by 40% for lack of success. Plaintiff's request for reimbursement of his expenses is denied. Absent agreement between the parties, the court will expect Plaintiff to submit a revised statement of fees within 14 days.

ENTER:

Dated: March 31, 2011

_____
REBECCA R. PALLMEYER
United States District Judge

14